UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

FREDRIC LEE STREVY,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 1:12-cv-634

Honorable Janet T. Neff

**REPORT AND RECOMMENDATION**

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On September 30, 2008, plaintiff filed his applications for benefits alleging a January 3, 2008 onset of disability.[1] (A.R. 111-17). Plaintiff's disability insured status expired on September 30, 2008. Thus, it was plaintiff's burden on his claim for DIB benefits to submit evidence demonstrating that he was disabled on or before September 30, 2008. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims were denied on initial review. (A.R. 60-68). On December 13, 2010, plaintiff received a hearing before an administrative law judge (ALJ), at which he was

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, October 2008 was plaintiff's earliest possible entitlement to SSI benefits.

represented by counsel. (A.R. 32-57). On January 11, 2011, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 16-27). On April 23, 2012, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ gave invalid reasons to reject a treating physician's assistant's opinions;

2. The ALJ gave insufficient reasons to reject plaintiff's credibility; and

3. The ALJ gave "no good reasons to credit the records reviewer."

(Plf. Brief at 2, docket # 11). I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th

Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on January 3, 2008, through September 30, 2008, but not thereafter. (A.R. 19). Plaintiff had not engaged in substantial gainful activity on or after January 3, 2008. (A.R. 19). Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD) status-post episode of bacterial pneumonia in January 2008, emphysema, and history of tobacco use.

(A.R. 19). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: standing and/or walking limited to 2 hours out of an 8 our period; no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; and avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, gasses, and poor ventilation.

(A.R. 20). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible. (A.R. 20-25). The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis[2] because he was capable of performing his past relevant work as an "architectural and commercial drafter." (A.R. 26).

Alternatively, the ALJ found that plaintiff was not disabled at step 5 of the sequential analysis. Plaintiff was 58-years-old as of his alleged onset of disability. Thus, at all times relevant to his claims for benefits he was classified as an individual of advanced age. (A.R. 26). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 26). The ALJ

---

[2]"Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

found that plaintiff had transferable job skills from past relevant work. (A.R. 26). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 10,700 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 50-53). The ALJ found that this constituted a significant number of jobs. Using Rule 202.07 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 26-27).

**1.**

Plaintiff argues that the ALJ gave "invalid reasons" to reject Physician's Assistant Jennifer Koetje's opinions. (Plf. Brief at 5-9; Reply Brief at 2-3). The administrative record contains very few medical records, but those records reveal that in early 2008, plaintiff had bacterial pneumonia. He was admitted to North Ottawa Community Hospital on January 4, 2008. He was treated with antibiotics and inhalers and discharged on January 6, 2008. (A.R. 194, 218). Plaintiff's past medical history [was] unremarkable except for his tobacco abuse." (A.R. 196). His chest x-rays showed "[p]robable COPD with no acute findings" and his CT scan showed "subtle evidence of emphysema." (A.R. 201-02). Plaintiff had a "40-pack/year history of smoking" and he "continue[d] to smoke." (A.R. 192-203).

On January 21, 2008, plaintiff reported to Larry Poel, D.O., that he was feeling "great" and "fel[t] like his breathing [was] back." (A.R. 218). Plaintiff had no chest pain, shortness of breath, headaches or dizziness. Dr. Poel attributed the minor fatigue that plaintiff reported to his

ongoing recovery from the infection that had caused his pneumonia. (A.R. 218). Dr. Poel diagnosed plaintiff's condition as "early emphysema." (A.R. 218).

On April 21, 2008, plaintiff appeared at Muskegon Family Care as a "new patient." (A.R. 228). X-rays taken on April 21, 2008, revealed that plaintiff's heart was not enlarged. His lungs were hyperinflated. He was diagnosed with emphysema with "[n]o acute findings." (A.R. 220). Ms. Koetje offered a diagnosis of chronic bronchitis and emphysema and gave plaintiff prescriptions for Advair and Combivent. She encouraged plaintiff to stop smoking and to avoid second-hand smoke. (A.R. 229). She indicated that on plaintiff's next visit she would discuss with him "applying for disability and seeing a pulmonologist." (A.R. 229).

On June 2, 2008, plaintiff reported that his condition had improved with Advair. He had never picked up his Combivent prescription. Ms. Koetje suggested that plaintiff might benefit from oxygen therapy. Plaintiff declined oxygen therapy at this point. Koetje "discussed applying for disability." (A.R. 227).

On October 6, 2008, plaintiff returned to Ms. Koetje complaining of "middle back pain" and seeking a refill on his medications. (A.R. 224). Plaintiff was in no acute distress and he was oriented in all three spheres. (A.R. 224). Plaintiff's heart sounds were normal. Ms. Koetje indicated that plaintiff's breath sounds were decreased and that she heard expiratory and inspiratory wheeze in both lung fields. Ms. Koetje offered a diagnosis of acute bronchitis and moderate to severe emphysema and renewed plaintiff's prescriptions. (A.R. 225).

On December 17, 2008, Donald Sheill, M.D., conducted a consultative examination and had plaintiff undergo pulmonary function tests. (A.R. 234-40). Plaintiff stated that prior to January 2008, he had not seen a physician for any respiratory infections or problems. Plaintiff

indicated that he could climb a flight of stairs. He was "intermittently working out of the house doing CAD design work." (A.R. 234). Dr. Sheill found that plaintiff was not in any acute distress and that his lungs were clear. Plaintiff had "mildly reduced breath sounds and no rales, rhonchi, or wheezing." Plaintiff had no cyanosis, clubbing, or edema. His heart rhythm was regular with no murmur or gallop. Dr. Sheill's diagnosis was COPD. (A.R. 234-35).

A second set of pulmonary function tests was taken on January 28, 2009. (A.R. 242-51). Shanthini Daniel, M.D., found that plaintiff's pulmonary function tests indicated a moderately severe obstruction. (A.R. 256). Based on her review of the medical records, Dr. Daniel offered her opinion that plaintiff was capable of performing a range of light work and should "avoid concentrated exposure" to extreme cold, extreme heat, and fumes, odors, gasses, and poor ventilation. (A.R. 254-61).

Marco J. Di Biase, M.D., found that plaintiff's x-rays taken on April 27, 2010, showed "no significant change when compared to 21 April 2008." (A.R. 267).

On October 21, 2010, Ms. Koetje completed a "Pulmonary Residual Functional Capacity Questionnaire," offering her opinions regarding plaintiff's RFC. (A.R. 268-70). The ALJ found that the RFC restrictions Ms. Koetje suggested were not persuasive because they were not well supported by objective medical evidence and were inconsistent with the other substantial evidence in the record:

> [T]he conclusions of treating physician's assistant Ms. Koetje cannot be given controlling or even deferential weight. Her conclusions are neither supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with the other substantial evidence in the case record. The only plausible explanation for her pessimistic assessment of the claimant's functional capabilities is that such an assessment was based on an unquestioning acceptance of the claimant's subjective complaints. For Social Security purposes, an impairment must be established, not only by a claimant's statement of

symptoms, but by medical evidence consisting of signs, symptoms, and laboratory findings (20 CFR 404.1508 and 416.908). There are no diagnostic tests or affirmative clinical findings that are consistent with the limitations imposed by Ms. Koetje. The claimant's episode of pneumonia resolved very quickly and all chest x-rays since that time have shown only mild respiratory disease. Spirometric testing shows the claimant responds positively to bronchodilator use. The record contains no objective evidence supporting the claimant's oxygen use and, giving the claimant the benefit of a doubt that he has to use oxygen, no objective evidence supporting an increase from 2 liters per minute to 3.5 liters per minute. Furthermore, Ms. Koetje's opinion is conclusory providing no supportive findings, data, or explanation of the evidence she relied upon in forming her opinion. In fact, clinical examinations revealed only mildly reduced breath sounds and no rales, rhonchi, wheezing, or cyanosis. In addition, physician's assistants are not included among the acceptable sources of medical evidence defined in the regulations (20 CFR 404.1513 and 416.913). Therefore information provided by physician's assistants does not equal in probative value reports from those medical sources shown as being acceptable such as licensed physicians or osteopaths (20 CFR 404.1513, 404.1527, 416.913, and 416.927). The findings of acceptable medical sources in this case (such as consulting examining physician Dr. She[i]ll) document, at most, an inability to do strenuous physical activity such as would be involved in medium-to-very-heavy work. The opinions of such acceptable medical sources are entitled to greater weight than the opinion of a non-acceptable source such as a physician's assistant (20 CFR 404.1513 and 416.913). The opinion of Ms. Koetje has been weighed and considered in accordance with the criteria set forth in 20 CFR 404.1527 and 416.927 as well as Social Security Rulings 96-2p, 96-5p, and 06-3p. It is found that this opinion evidence is not entitled to any special weight under the facts and circumstances of this particular case.

(A.R. 22).

A physician's assistant is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). There is no "treating physician's assistant rule," and the opinion of a physician's assistant is not entitled to any particular weight. *See Geiner v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on*

*Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)). The opinions of a physician's assistant fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1512, 416.912). This is not a demanding standard. It was easily met here.

## 2.

Plaintiff argues that the ALJ gave "no good reasons"[3] to credit the opinions expressed by Dr. Daniel. (Plf. Brief at 15; Reply Brief at 4). Dr. Daniel reviewed plaintiff's medical records and offered her professional opinion that plaintiff was capable of performing a limited range of light work. The ALJ gave Dr. Daniel's opinion significant weight. (A.R. 22). The licensed physician's medical expertise and her reliance on objective evidence were certainly good reasons for the ALJ to give significant weight to Dr. Daniel's opinions. *See* 20 C.F.R. §§ 404.1513(a)(1), .1527(c)(3)-(5), 416.913(a)(1), .927(c)(3)-(5).

---

[3]In this case, there is no opinion from a treating physician entitled to special treatment under the treating physician rule. *See Rabbers v. Commissioner*, 582 F.3d 647, 656-57 (6th Cir. 2009). The standard applicable to the ALJ's factual finding regarding plaintiff's RFC is "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401. Further, RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

**3.**

Plaintiff argues that the ALJ gave "insufficient reasons" to reject the credibility of his testimony. (Plf. Brief at 9-15; Reply Brief at 3-4). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ is responsible for making credibility determinations, not the court. The ALJ gave more than sufficient reasons for his factual finding regarding plaintiff's credibility. (A.R. 23-25). I find that the ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: August 5, 2013   /s/ Joseph G. Scoville
United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).